UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

R&M GOVERNMENT SERVICES, INC.,

    Plaintiff,

v.                                                  Civ. No. 2:24-524 GJF/JHR

KAMAN AEROSPACE CORP.,

    Defendant.

**MEMORANDUM OPINION AND ORDER ON
DEFENDANT'S MOTION TO STRIKE COUNTERCLAIM IN REPLY**

THIS MATTER is before the Court on Kaman Aerospace Corporation's Motion to Strike R&M Government Services, Inc.'s Counterclaim in Reply ("Motion"), which is fully briefed. ECFs 37, 39, 40. Having considered the filings and the relevant law, the Court will GRANT the Motion and STRIKE the Counterclaim in Reply but will permit R&M Government Services, Inc. ("R&M") to amend its Complaint to assert the claim contained in its Counterclaim in Reply.

**I.  BACKGROUND**

On April 8, 2024, R&M filed its Complaint, asserting claims against Kaman Aerospace Corporation ("Kaman") for negligent misrepresentation (Count I), constructive fraud (Count II), violation of the New Mexico Unfair Practices Act (Count III), and violation of the Implied Duty of Good Faith and Fair Dealing (Count IV). R&M's claims arise from a commercial relationship in which R&M and Kaman collaborated to identify and compete for small business contracts with the federal government. *See* ECF 1-1 ¶ 2; ECF 35 at 1 ¶ 2, at 18 ¶ 11. During the parties' relationship, R&M applied for and was awarded seven government contracts for aircraft replacement parts: two contracts with the Defense Logistics Agency ("DLA Contracts") and five contracts with the U.S. Air Force ("Air Force Contracts"). ECF 1-1 ¶¶ 45, 58; ECF 35 at 19–20

¶¶ 20, 22, 29–30**.** After securing these contracts, R&M issued purchase orders ("POs") 20803, 20864, 20865, 20875, 20894, and 20601[1] to Kaman for component and subcomponent parts. ECF 1-1 ¶¶ 61, 132; ECF 35 at 21 ¶¶ 37, 39. Allegations concerning these POs are central to the Motion before the Court. *See* ECFs 37; 39; 40.

In its September 16, 2024 Memorandum Opinion and Order, the Court dismissed without prejudice R&M's constructive fraud claim (Count II) for failure to satisfy Federal Rule of Civil Procedure 9(b) but permitted R&M to amend its complaint as to that claim. ECF 33 at 36. R&M elected not to amend, and Kaman's Answer and Counterclaim followed. ECF 35. In its singular counterclaim for breach of contract, Kaman alleges that "[t]he POs issued in connection with the Air Force Contracts and the DLA Contract[s] are valid, enforceable contracts [that] imposed binding contractual obligations on R&M[,]" which R&M breached. *Id*. at 24 ¶¶ 61–64.

Three weeks later, R&M filed an Answer to Kaman's Counterclaim and its own Counterclaim in Reply. ECF 36. Responding to Kaman's breach of contract counterclaim, R&M admits that it did not pay Kaman "the amounts referenced in the POs" but denies that Kaman "performed the 'work' called for by the POs." *Id*. ¶ 59. R&M further asserts that "the POs were *not* binding contracts." *Id*. (emphasis added). Then, in its Counterclaim in Reply, R&M asserts its own breach of contract counterclaim against Kaman, though it specifies that it does so "[i]n the [a]lternative." *Id*. at 13–14 ¶¶ 14–18. There, R&M again alleges that the POs were "not valid, enforceable contracts," but "in the alternative, *if* the Court determines that the POs *are* valid and/or enforceable, then Kaman has materially breached those contracts by, among other things, failing to provide any goods or services called for by the POs." *Id*. at 14 ¶¶ 16–17 (emphasis added). In addition, R&M's Counterclaim in Reply includes a footnote "clarify[ing] that the Fourth Claim

---

[1] PO 20601 was issued in connection with the DLA Contracts, whereas the other POs were issued in connection with the Air Force Contracts. *See* ECF 1-1 ¶¶ 61, 132; ECF 35 at 21 ¶¶ 37, 39.

2

for Relief *in its Complaint* (violation of the implied duty of good faith and fair dealing) is also an alternative claim." *Id*. at 14 ¶ 17 n.3 (emphasis added). Within the allegations of the Complaint that correspond to R&M's good faith and fair dealing claim, R&M alleges "POs 20803, 20864, 20865, 20875, and 20894 were legally enforceable contracts." ECF 1-1 ¶ 190 (emphasis added). In other words, both R&M's good faith and fair dealing claim and its breach of contract counterclaim assert that the POs were legally enforceable contracts.[2] In contrast, R&M's Answer to Kaman's Counterclaim asserts that "the POs were *not* binding contracts." ECF 36 ¶ 59. Moreover, R&M's Complaint alleges that the POs related to the Air Force Contracts were "initially issued as mere placeholders"; "were not intended to be the final [POs] reflecting the values that R&M would pay"; and "were sent to Kaman only to reserve Kaman's participation in the Air Force Contracts." ECF 1-1 ¶ 62.

## II.   PARTIES' PRIMARY ARGUMENTS

### a.   Kaman's Contentions

In its Motion to Strike, Kaman accuses R&M of making an "about-face" on whether the subject POs were enforceable contracts, noting that R&M asserted in its Complaint that the POs *were* "legally enforceable contracts" but then asserted in its Counterclaim in Reply that they are *not* valid, enforceable contracts. ECF 37 at 1–2 (citing ECF 1-1 ¶ 190; ECF 36 at 14 ¶ 16). According to Kaman, "R&M's newfound position—that the purchase orders are not contracts—constitutes an improper amendment to its Complaint." *Id*. at 3.

Kaman also suggests, almost in passing, that the "better-reasoned cases" hold that a "counterclaim in reply" is itself not a proper pleading under the Federal Rules of Civil Procedure.

---

[2] The Court observes that R&M's breach of contract counterclaim appears to include PO 20601, which relates to the DLA Contracts, whereas its good faith and fair dealing claim omits that PO and references only the POs that relate to the Air Force Contracts. *Compare* ECF 36 at 14 ¶¶ 16–17, *with* ECF 1-1 ¶ 190. The omission of PO 20601 is not material to the Court's resolution of the Motion.

3

*Id*. at 5 (citing *Turner & Boisseau, Chartered v. Nationwide Mut. Ins. Co.*, 175 F.R.D. 686, 687 (D. Kan. 1997)). But Kaman stops short of asking the Court to resolve this issue. *Id*. Instead, it argues that "even if a counterclaim in reply is ever an appropriate vehicle for advancing a new claim, it is certainly not the proper mechanism for changing the allegations of a prior pleading." *Id*. Describing R&M's counterclaim as "a complete 180 on a key allegation of R&M's complaint" (*i.e*., whether the POs were enforceable contracts), Kaman contends that R&M's Counterclaim in Reply improperly sidesteps Federal Rule of Civil Procedure 15(a)(2) as well as this District's Local Rule 15.1. ECF 37 at 3–4 (citations omitted); *see also* Fed. R. Civ. P. 15(a)(2) (requiring a party seeking to amend its complaint to obtain its "opposing party's written consent or the court's leave"); D.N.M.LR-Civ. 15.1 (requiring a party seeking leave to amend to submit its proposed amended pleading). In short, because R&M did not obtain Kaman's consent or the Court's leave, nor supply a proposed amended pleading, Kaman urges the Court to strike R&M's Counterclaim in Reply.[3]

### b. R&M's Contentions

In response, R&M maintains that its Answer and Counterclaim in Reply are proper even though the former asserts that the POs are unenforceable, and the latter accuses Kaman of breaching those same POs. ECF 39 at 4–8. R&M emphasizes that Federal Rule of Civil Procedure 8(d) permits a party to "state as many separate claims or defenses as it has, *regardless of consistency*" and authorizes "2 or more statements of a claim or defense *alternatively or hypothetically*." *Id*. at 2 (quoting Fed. R. Civ. P. 8(d)(2)–(3)). And more fundamentally, R&M contends that counterclaims in reply are authorized by the Federal Rules of Civil Procedure. *Id*. at

---

[3] Although Kaman quotes Paragraph 59 of R&M's Answer to its Counterclaim in support of its argument that R&M's positions concerning the enforceability of the POs are inconsistent, it clarifies in its reply brief that it is not asking the Court to strike R&M's Answer or any paragraphs therein. ECF 40 at 1. Rather, Kaman asks only that the Court strike R&M's "'Counterclaim in Reply': *i.e*., Paragraph 14 through 18 and footnotes 2 and 3 . . . ." ECF 40 at 1.

4

3. In support, it observes that Rule 13 permits counterclaims to be asserted in a "pleading," and Rule 7(a)(3) defines "pleading" to include an "answer to a counterclaim." *Id.* Moreover, R&M points the Court to cases in which other courts have determined that the Federal Rules of Civil Procedure authorize counterclaims in reply. *Id.* (citing *Pogue v. Allied Prods. Corp.*, No. 89 C 3548, 1989 WL 111854, at *4 (N.D. Ill. Sept. 20, 1989); *Power Tools & Supply, Inc. v. Cooper Power Tools, Inc.*, No. 05-CV-73615-DT, 2007 WL 1218701, at *2 (E.D. Mich. Apr. 20, 2007); *Mattel, Inc. v. MGA Ent., Inc.*, 705 F.3d 1108, 1110 (9th Cir. 2013)).

R&M also takes issue with Kaman's argument that the Court should strike its Counterclaim in Reply on the ground that it constitutes a "complete 180" from the allegations of its Complaint. *Id.* Acknowledging that Paragraph 190 of its Complaint, asserted in the context of its good faith and fair dealing claim, alleges the POs were enforceable, R&M explains: "this allegation was included [in the Complaint] as an *alternative* claim for relief." *Id.* R&M contends that apart from its good faith and fair dealing claim, its Complaint otherwise alleged the POs were unenforceable, including when it asserted that they were "mere placeholders" that were "not intended to be the final Purchase Orders reflecting the values that R&M would pay." *Id.* (citing ECF 1-1 ¶¶ 62, 147). According to R&M, it alleges that "the POs were unenforceable 'agreements to agree.'" *Id.* (citation omitted). Nevertheless, if the Court concludes that its Counterclaim in Reply must be stricken on account of inconsistency with the allegations of its Complaint, R&M asks that it be granted leave to amend its Complaint "to clarify that the allegations in Paragraph 190 were made in the alternative." *Id.* at 2–3.

### III. ANALYSIS

Having reviewed the allegations contained in each of R&M's pleadings, the Court is not convinced that inconsistency alone warrants striking its Counterclaim in Reply. That is, the Court

agrees with R&M that its Counterclaim in Reply was not the first time it asserted, or at least intimated, that the POs were unenforceable. *See, e.g.,* ECF 1-1 ¶¶ 62, 147. More importantly, as both sides acknowledge, inconsistent claims are permitted under the Federal Rules of Civil Procedure. *See* ECF 37 at 5 (citing Fed. R. Civ. P. 8(d)(3)); ECF 39 at 2 (citing Fed. R. Civ. P. 8(d)(2)–(3)). At the same time, the Court agrees with Kaman that the Federal Rules of Civil Procedure do not endorse amending or clarifying a claim asserted in a *complaint* by virtue of a footnote in a *counterclaim in reply*.

  R&M relies on out-of-circuit cases for the proposition that the Federal Rules of Civil Procedure authorize a counterclaim in reply. *See* ECF 39 at 3 (citing *Pogue*, 1989 WL 111854, at *4 (N.D. Ill.); *Power Tools & Supply, Inc.*, 2007 WL 1218701, at *2 (E.D. Mich.); *Mattel, Inc.*, 705 F.3d at 1110 (9th Cir.)). But the Court remains unconvinced that the Tenth Circuit would permit counterclaims in reply, particularly when, as here, they are asserted in response to *compulsory* counterclaims.[4] *See Turner & Boisseau*, 175 F.R.D. at 687 (predicting that the Tenth Circuit would not permit counterclaims in reply because they circumvent the amendment rules and noting that courts that have permitted them have largely done so in the context of "compulsory counterclaims in reply to a defendant's *permissive* counterclaim" (emphasis added)); *see also Lincoln Sav. Bank v. Open Sols., Inc.*, 956 F. Supp. 2d 1032, 1038 (N.D. Iowa 2013) (observing that "[s]ome courts . . . that have considered the validity of counterclaims to counterclaims, have allowed plaintiffs to file counterclaims in reply when such counterclaims are compulsory and in response to permissive counterclaims") (citations omitted); *see also* Fed. R. Civ. P. 7(a) (identifying the pleadings permitted and omitting any reference to a "counterclaim in reply" or a counterclaim to a counterclaim). And notably, R&M does not point the Court to any in-circuit case

---

[4] Under Federal Rule of Civil Procedure 13(a)(1)(A), a compulsory counterclaim is a claim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."

authorizing counterclaims in reply *in any context*. *See* ECF 39 at 3.

Under these circumstances, the Court concludes that striking R&M's Counterclaim in Reply but permitting R&M to amend its Complaint is the best course because (1) it remains an open question in the Tenth Circuit whether counterclaims in reply to compulsory counterclaims are authorized; (2) the best place for R&M to clarify that its good faith and fair dealing claim is asserted *in the alternative* is in the Complaint itself, rather than in a footnote contained within a separate pleading; (3) the Court has not yet imposed a deadline for amendment of pleadings; and (4) as a practical matter, leaving the Counterclaim in Reply in place risks expanding the pleadings to the point of unwieldiness through still more rounds of answers to counterclaims and counterclaims in reply, whereas permitting R&M to amend its Complaint with the same allegations contained in its Counterclaim in Reply will streamline the pleadings.

Effectively, the Court construes R&M's Counterclaim in Reply as a motion to amend pursuant to Federal Rule of Civil Procedure 15(a)(2). *See Turner & Boisseau*, 175 F.R.D. at 688 (construing the plaintiff's counterclaim in reply as a motion to amend its complaint). In so doing, the Court bears in mind that Rule 15(a)(2) requires leave to amend "when justice so requires" and that "[g]enerally, refusing leave to amend is only justified upon a showing of undue delay, bad faith, or undue prejudice to the opposing party." *Childers v. Indep. Sch. Dist. No. 1*, 676 F.2d 1338, 1343 (10th Cir. 1982).

Kaman's only attempt to resist amendment of R&M's Complaint is its suggestion that it is prejudiced by R&M's reversal of its position on the enforceability of the POs. *See* ECF 37 at 5 (Kaman arguing that R&M "chang[ing] its mind" is the "sort of thing the Court could consider when evaluating whether 'justice . . . requires' leave to amend") (citing Fed. R. Civ. P. 15(a)(2); *Hollstein v. Caleel & Hayden, LLC*, No. 11-CV-00605, 2012 WL 4050302, at *6 (D. Colo. Sept.

14, 2012) [5]); *id*. at 4 (Kaman explaining that it "brought a breach-of-contract counterclaim knowing that the first element of that claim—the existence of a valid contract—was satisfied and noting that "R&M's new stance on this issue means Kaman might have to add quasi-contract theories to its Counterclaim"). That R&M's recent assertion of a breach of contract claim renders Kaman's counterclaim more difficult to prove than initially anticipated or necessitates an additional claim on Kaman's part is not the type of prejudice that would justify depriving R&M of its ability to assert that claim, particularly before the Court has even imposed a deadline for moving to amend. Kaman seems to recognize as much when it clarifies in its reply that it "is not asking the Court to stop R&M from advancing a breach of contract claim or changing its good faith and fair dealing claim" but is only asking that R&M be required to do so through the procedure outlined in the Federal Rules of Civil Procedure. *See* ECF 40 at 4. In the absence of any factors that weigh against granting R&M leave to amend, the Court concludes that justice requires permitting R&M to amend its Complaint with the breach of contract claim advanced in its Counterclaim in Reply.

  The Court acknowledges R&M's position that *requiring* it to amend its Complaint in lieu of leaving its Counterclaim in Reply intact "serve[s] to delay this action even more." ECF 39 at 3. But R&M likely could have curtailed the delay about which it now complains had it filed a motion to amend pursuant to Federal Rule of Civil Procedure 15(a)(2), which is a more orthodox—and explicitly authorized—procedural vehicle for asserting a new claim. Even so, to minimize delay going forward, the Court will require R&M to file its amended complaint within five days of entry of this order, will require Kaman to file its response within ten days of service of the amended complaint, and will refer the matter to the pretrial judge for a scheduling conference.

---

[5] *Hollstein* is not on point because the plaintiff there asserted a new claim in response to a summary judgment motion without any corresponding claim in her complaint and outside of the time prescribed by the scheduling order for moving to amend. 2012 WL 4050302, at *5–6.

## IV.  CONCLUSION

**IT IS THEREFORE ORDERED** that the Motion to Strike [ECF 37] is **GRANTED,** and the portion of ECF 36 identified as R&M's "Counterclaim in Reply" is **STRICKEN.**

**IT IS FURTHER ORDERED** that R&M shall have five (5) days from entry of this Order in which – if it chooses – to file an amended complaint that includes as a new count the breach of contract claim previously asserted in its Counterclaim in Reply and that clarifies that its claim for Violation of the Implied Duty of Good Faith and Fair Dealing is asserted as an alternative claim.

**IT IS FURTHER ORDERED** that Kaman, within ten (10) days of service of R&M's amended complaint, shall file its response thereto.

**IT IS FINALLY ORDERED** that this matter is referred to the pretrial judge for a scheduling conference.

**SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*